APPEAL OF M. I. STEWART & CO.

Docket No. 473.    Submitted April 22, 1925.    Decided September 30, 1925.

1. Reserves set up by a taxpayer at the close of the taxable year in amounts equal to a certain percentage of its then outstanding accounts receivable, for discounts anticipated in connection with the settlement of such accounts, are not deductible from gross income.

2. A stockholder owning one-half of the stock of taxpayer corporation, acting on behalf of himself and the owner of the remainder of the stock, acquired stock in another corporation and transferred it to taxpayer, which credited the accounts of both stockholders with the par value of such stock.  During the same year taxpayer acquired directly additional shares of such stock and sold all of the stock to one of its stockholders for an amount much less than the cost thereof, who, in turn, delivered one-half of the stock to his co-stockholder. *Held*, not a *bona fide* sale upon which taxpayer was entitled to claim a deductible loss.

*Rolland L. Nutt, Esq.*, for the taxpayer.
*Laurence Graves, Esq.*, for the Commissioner.

Before JAMES, KORNER, and STERNHAGEN,

The taxpayer is a New York corporation with its principal office in New York City, and was during the taxable years in question engaged in business as dealer in ladies' wearing apparel.  At the close of each of the calendar years 1918, 1919, and 1920 the taxpayer set up reserves in the amounts, respectively, of $1,363.20, $9,338.67, and $1,708.55, equal to 10 per cent of its then outstanding accounts receivable, to cover discounts anticipated in connection with the payment of such accounts, and deducted the above-mentioned amounts in the determination of its net taxable income.  The books of the taxpayer were kept upon an accrual basis.  The Commissioner disallowed the deductions above mentioned.  The actual credits in connection with the liquidation of the accounts receivable of the taxpayer subsequently to the close of the above-mentioned years ranged from 6 to 25 per cent of the accounts.

92208—26——47

In February and March, 1920, the taxpayer acquired from Meyer and Isaac Liberman 702½ shares of stock of the Rotary Shirt Co., crediting the accounts of the said Meyer and Isaac Liberman on account of such transfer a total amount of $70,250. Meyer and Isaac Liberman were, during the year 1920, owners in equal shares of all the outstanding stock of the taxpayer.

The Rotary Shirt Co. is a New York corporation and is now and was during the year 1920 engaged in the manufacture of silk and cotton shirts, mostly silk. More than 70 per cent of the shirts manufactured in 1920 were silk. The market price of textiles, particularly silk, was the highest it had been in years at the beginning of the year 1920. About April or May, 1920, the market price of silk materials took a sudden drop. The Rotary Shirt Co., having stocked itself heavily with silk materials purchased on an extra high market, faced a heavy loss through the drop in price of materials and the corresponding drop in the price of finished goods at which they were forced to dispose of their shirts. More capital was needed, and the Rotary Shirt Co. called upon its stockholders, of which the taxpayer was one, for additional capital through stock subscriptions.

Accordingly, in May and June, 1920, the taxpayer bought a total of 74 shares of Rotary Shirt Co. stock at par, $100 per share. The taxpayer not having ready available cash for this purchase, Meyer Liberman for himself and his brother, Isaac Liberman, paid $7,400 cash to the Rotary Shirt Co. for the account of the taxpayer for these 74 shares, and the 74 shares of Rotary Shirt Co. stock were issued direct to the taxpayer. Later, about July 1, 1920, Meyer Liberman and Isaac Liberman were reimbursed by the taxpayer through the issuance to them of 74 shares of the taxpayer corporation's own stock, which stock had a par value of $100.

In September, 1920, the taxpayer transferred to Meyer Liberman the entire 776½ shares of the stock of the Rotary Shirt Co. acquired in the manner above set forth, and received therefor from the said Meyer Liberman $31,000. This amount was paid by Meyer Liberman to the taxpayer in the latter part of 1920, and the stock transfer was recorded on the books of the Rotary Shirt Co. on December 31, 1920.

Meyer Liberman, in acquiring the above-mentioned stock from the taxpayer, acted on behalf of himself and his brother, receiving the stock of the Rotary Shirt Co. for their equal benefit, the stock and the payment above set forth to be shared equally between them.

In its return for the year 1920 the taxpayer claimed a deduction from gross income on account of an alleged loss in the above-mentioned transaction, representing the difference between the cost of $77,650 of the stock of the Rotary Shirt Co., as shown by its books, and the price received from Meyer Liberman, $31,000, the

said alleged loss being $46,650. This deduction the Commissioner disallowed.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

JAMES: The taxpayer alleges error in two particulars on the part of the Commissioner in connection with the auditing of its returns. It alleges: (1) That the Commissioner should have allowed reserves for discounts which it expected to pay in connection with the settlement of the accounts of its customers; and (2) that it sustained a loss on account of the transfer of the stock of the Rotary Shirt Co. in the manner set forth in the foregoing findings of fact.

In our opinion the decisions of the Board have fully disposed of both of these points. Reserves are not allowable deductions from gross income unless specifically provided for by statute. *Appeal of William J. Ostheimer*, 1 B. T. A. 18; *Appeal of Consolidated Asphalt Co.*, 1 B. T. A. 79; *Appeal of Uvalde Co.*, 1 B. T. A. 932; *Appeal of Pan-American Hide Co.*, 1 B. T. A. 1249. The taxpayer also claims that the transfer of the stock of the Rotary Shirt Co. for an amount much less than its cost to its own stockholders in the proportion of their stockholdings registered a deductible loss in its behalf. At the time of its distribution the stock was reasonably worth its cost to the corporation. It is not necessary to discuss the evidence in detail other than that almost simultaneously with the date of this transfer the Liberman brothers acquired from the Rotary Shirt Co. itself, on their own behalf, stock of that corporation at par, and it was only on examination by a member of the Board that the important fact developed that Meyer Liberman in acquiring the stock of the Rotary Shirt Co. from the taxpayer acquired it on behalf of himself and his brother. This transaction was a patent evasion. It can not be too much emphasized that alleged sales of property for the purpose of establishing losses must be real, valid transactions, definitely placing the legal and equitable ownership of the property alleged to have been sold out of the hands and out of the control of the seller. In the case of corporations sales to stockholders in all cases are subject to special scrutiny and their good faith must be unquestioned. The principle of corporate entity can not be used to cloak a transaction which is essentially a fraud upon the public revenue.

ARUNDELL not participating.